Hear ye, hear ye, this Honorable Appellate Court for the 2nd Judicial District is now in session, the Honorable Christopher M. Kennedy presiding. Your Honors, the only case on the docket this morning is 2-24-0703, Silverthorne Development Company, doing business as Silverthorne Home Builders, an Illinois corporation, for himself and other similarly situated class members, Plaintiff Appellant, the Sycamore Creek Homeowners Association, an Illinois not-for-profit corporation, Josh Hall, and J.R. H. Construction Corporation, Defendants Appellees. Arguing for the Appellant, Mr. C. Nicholas Kronauer. Arguing for the Appellee, Mr. Michael L. Rieses. All right, Mr. Kronauer, you may proceed. Thank you, Justice Kennedy. Good morning. May it please the Court. Morning. Mr. Maxwell, Mr. Rieses, as you all know, it's good to see you again. My name is Nicholas Kronauer, and I represent the Appellant. Before we begin, I can get into what I've planned remarks, but are there any specific questions that I could answer for any of the Justices to start us off? All right. No, I think it'd be best for you to go ahead and frame your arguments. Perfect, thank you. Basically, in a nutshell, Justice Kennedy and Justice Shostak and Justice Kaplan, I think we have a situation with very heavy factual issues. What was the intent? What was the target? Was there bad faith? Was there self-dealing? Essentially rendered as legal conclusions rather than issues of fact that should have gone to a trial. I know the case, people think, well, this is a lot of time spent on Windows, but this is more about Windows, Justices. This is about how the governance and integrity result when they're self-dealing from a board member. A board member used, this is Josh Hall, the owner of JRH Construction, the HOA authority to eliminate a competitor. This, again, is a heavy factual record in this case. These were alleged, and yet, despite these allegations, the trial court treated these factual issues as failing to state a claim, taking the issue from the jury. Obviously, this was dismissed on a 2615 dismissal, three counts, which we're going to go over. Count two for tortious interference with the business expectancy, count five for civil conspiracy, and count six for concert of action. As detailed in the brief, which I'm not going to belabor because I know you, Justice, did the work to review everything, we allege that the defendants, Sycamore Creek, Josh Hall, and his construction company conspired to amend the HOA's architectural rules in violation of the governing documents. That's the most important part of this case. There's bylaws, in effect, that talk about encouraging energy efficiency. It's more than just encouraging, the language is it's something that needs to be strived for, needs to be pursued. The factual record that was developed is that that was never a concern by anyone related to the HOA to Josh Hall when they put this window ban, in effect, which actually required less efficient windows to be used for all homes in the subdivision, despite prior homes being approved by Josh Hall before he was a competitor, approving these more efficient vinyl windows. And, you know, ultimately, you know, that the result is alleged and is well known, there's over $900,000 in lost income to this builder because of these windows. Counsel, counsel, can I ask you a question? Can you have a conspiracy between a principal and an agent? So, in this situation, yes. So, the case is reliant. So, here's the problem. And you've got an agent of the HOA, who's Josh Hall, and you have an agent of GRH, right? So, you have, it's almost like for Christians, like the Holy Trinity, right? You've got the Father, Son, Holy Spirit, you've got GRH, you've got the HOA, and you've got Josh Hall. He's wearing multiple hats, but those, you know, legally are distinct entities, which, as a matter of law, can create a conspiracy. Now, the case cited by the defense is just principal, agent, there's no other third party, right? That's why this case is distinguishable and why it's important that GRH is named in the complaint. GRH is a separate legal entity in the actions to GRH create the conspiracy. The fact that there's this Josh Hall going back and forth, right? That's the evidence of the self-dealing. That's the problem. That's the conspiracy. And as a matter of law, absolutely given that GRH is a separate legal entity. And ultimately, we're going to ask that the court reverse their demand for further proceedings because they're issues of fact for these three counts. So, now at this point, I'll start going over the counts we're here for today. Count two is tortious interference with a business expectancy. The trial court erred in dismissing this because, you know, all the elements here were planned. Again, 615, look at the elements where the inferences take the allegations as true. Clearly, this isn't that. We've got expectancy of third party buyers, right? We have Josh Hall looking at contracts, looking at plans for buyers, right? That eventually get disproved. So, there's the four elements. What third parties were impacted for the tortious interference? You say which four parties? Which third parties were impacted for the tortious interference? So, good question, Justice. The third parties are the homebuyers. The whole issue in this case is they're, you know, the defensible or they're targeting the builder, not the homebuyer. The problem is they are controlling the builder who is targeting the homebuyer. The homebuyer wants these vinyl windows, right? We've got four consumers listing the complaint. They want these vinyl windows. The HOA says, sorry, there's a new rule. The builder can't build them. So, those plans get denied. So, the third party is clearly targeted to be the buyers of the homes in Sycamore Creek. So, I mean, another analogy, just trying to think through this last night, you know, how to explain this. And it's, again, so say you have a family, very wealthy family and there's a trust fund, right? One of the kids does something to make the patriarch or the matriarch upset, right? So, they don't deposit money in the trust account. Are they targeting the trust? They're targeting the kids. At the end of the day, you're targeting the homeowners because that's who's buying the homes by telling them you can't buy these windows. I think it's important to point out, this is in the record. It's not really briefed that well, but it's in the trial court record. I mean, these windows, the price difference is significant. We're talking $40,000, $50,000. So, you know, it's not like we're just talking a couple thousand dollars here or there. These aluminum plated windows that are inefficient are also way more expensive. Now, let me ask you another question. Mr. Recess argued in the brief, were the architectural guidelines intentional and justified acts directed at your potential customers? Isn't that the question? Oh, I think that's a question of fact, right? I don't think that can be construed against my client at a 615 stage. If I'm them, can you argue that? Yes, but again, that's an argument requiring some type of factual determination, which is not suitable for 615. But can't you get a customer who would buy the other windows? I mean, this isn't like stopping your client completely. If they find customers who buy the other windows, they could still build with those windows, can't they? The market for those windows is extremely small. It's not their model. Could a customer come to them and say, we want those windows? They could, but that's very rare, very common because these are very expensive windows. And the windows they offer in their homes, I mean, they build lots of homes, are the vinyl windows. So then they can build those homes with the vinyl windows somewhere other than Sycamore Creek? Again, it depends on the subdivision, depends on the HOA. Everyone's got their different rules, different building specs, so it just depends. But they can't build them in Sycamore Creek where they own the lots, where they used to build with these vinyl windows until they were competing against Josh Hall, which I think is also a differentiator. What's important in this case is you have a builder who wasn't building and approving these plans and then decided he was going to build homes with different, more expensive, less efficient windows. And so when that came about, took actions to then, in essence, ice out Silverthorne by precluding these windows that they put in their home. I think it's important to kind of dovetail off what you said, Judge Shostek, is the bylaws, right? I mean, just because... Sorry, Justice, you're talking, but I don't hear you. Can you hear me now? Yes. Okay, before you go to the bylaws, distinguish the Continental Mobile Telephone case where the court ruled that rate changes weren't directed at plaintiff's customers. Isn't that this case? I mean, can you distinguish that? No, absolutely, because again, you're dealing with regulatory action, which is different from a private entity who knows what's being built in the subdivision and then goes out and builds in the subdivision the very windows that are only allowed and barring other windows that were allowed. It's totally different from Continental where there's express contractual authority. And I think you got to remember, again, the bylaws are like the Constitution. So in Continental, I mean, if there's nothing regulating the government body or the entity, right, they have the ability to do that. But we bylaws here which require energy efficiency. And that is kind of the distinction of all these cases, right? If these bylaws weren't here, you know, we have a different case, different argument, different situation. But you have these bylaws. Before we talk about that too, we talk about the difference between, and you talk, between impacting your clients. There's a difference between whether it impacts them or whether it is directed at them. Isn't that correct? So, I mean, I don't think impact and directed are one and the same when you're talking about this type of situation, when you're talking about the tortious interference. But again, that's a factual issue, right? I think to try to construe that now is the hard part for the court. You know, maybe summary judgment, maybe at trial you can make that argument. But to just say now that they were impacted but not directed, I think it's an issue and I think it defies the facts. Again, it goes back to, you know, how many homes did they build with these vinyl windows before Josh Hall was on the board? You know, five. Josh Hall started building homes, all of a sudden he's in charge of the board and this window rule gets passed which explicitly benefits him. So, you know, impact, was it directed? There's clearly issues of fact that support that at this stage that makes 615, you know, the wrong vehicle to, I think, dispose of this case at this juncture. And the other thing too that is in the record, and the briefs talk about this very briefly, is you've got an individual who's not only on the review committee, he's making exceptions for his own builds, right? Which just shows that these rules are not about innocuous impact. It's clearly a mechanism to let him build what he wants and ice out Silverthorne or any other developer. You know, just because they make a big deal about, well, other developers that follow the same rules, well, the other developers weren't building there, right? So... He's not the only one on the board. Can't it be argued that they just wanted it to aesthetically to look better with these other windows versus vinyl windows? This is the problem. If they would have passed a rule that took in efficiency, you know, applied an R value, something objective, again, we were in a totally different case. I think the case is probably hard to pursue, but this just whole... It's got to be aluminum clad. Efficiency doesn't matter. R value doesn't matter. That's where the problem comes in. And it becomes very subjective and allows this self dealing, which should not occur. And the law... It's more aesthetics, isn't it? Versus efficiency. That's the reason they pass it. Correct. That's in the record that the efficiency wasn't considered, wasn't thought about, didn't matter, which is the problem. Unlike Continental, unlike DuPage, again, you don't have this bylaws and you need to consider this and they do the exact opposite or admit that they don't even consider that one way, shape, or form. And that's the problem. The civil conspiracy we kind of talked about, obviously, civil conspiracy rises and falls with the underlying tort, which is the interference with the business expectancy, which again, the reason we talked about clearly the elements at this stage have been met. Unless your honors have any other questions, I don't have anything else for my argument at this time and reserve the remaining time for rebuttal. Justice McLaren, do you have any questions? Yes, I do. It's been my experience that in some of these subdivisions that the developer controls the board or the homeowners association and doesn't relinquish control over it until such time as usually a percentage, which can be arbitrary insofar as transfers of title to third parties, would then indicate that the developer is a person who either builds on his own or her own or controls the general contractor. And so where was this particular subdivision insofar as who was in control of the homeowners association at the time these windows were chosen? It would have been Josh Halls on the board and other members that were deposed, who their specific names were. I can't recite that to you. I can provide that to you, but it was homeowners in the community. This is a development that's been around, I think, since probably 08. It wasn't something that Silverthorne developed from the ground up. They basically bought a bunch of lots, bought them from when lots got cheaper back in the 2010s, and was building houses kind of on an as-lot basis so they could pick up lots at the right price point. So yeah, some subdivisions, the developer sets it up, they control it until they get farther along and then they kind of release control, but that was not really the case in this situation. It sounds like the ins got an advantage and the outs got a disadvantage. How is that illegal? Again, the problem is it's illegal because it's self-dealing. There's a fiduciary duty when you're on the board to do what's best for the subdivision, not what's best for JRH Construction or Josh Hall. And again, the problem is, you know, at the end of the day, there's this bylaw, right? So the board can't just ignore its bylaws. The bylaws are, as I've said, the case law is clear on this. It's the constitution of the HOA, right? So another analogy would be like a state trying to say, well, we don't believe in free speech in this state. Well, our constitution says otherwise. The bylaws dictate what the board can or can't do, and in this situation, it requires they consider energy efficiency, which they admitted in deposition was never a thought, never a consideration. And that's why, Your Honor, it's totally tortious and illegal. There's lawful competition, there's unlawful competition. And to come on the board and then pass laws that favor one builder to the detriment of all others clearly is not fair competition under any legal standard. Well, using your analogy relative to freedom of speech, when does this right attach? Does it attach before or after the developer and the board relinquish or keep control of the bylaws and the subdivision and the construction of the subdivision? It's when the bylaws would be passed, adopted, ratified. The bylaws control whether the developer owns all the lots, whether some rich land investor owns all the lots, the bylaws control. Now, I'm not saying they can't go in and change the bylaws, right? But that's not this case, it hasn't been done. And if the bylaws haven't been changed, it's how the bylaws read, they'd have to be complied with regardless if someone owns 100% of lots or owns 52% of lots or 48% of lots. Reference in the bylaws where the exercise of discretion relative to the choice of windows is limited, proscribed, defined, affected, how or where in the bylaws do you or does your client have some sort of proprietary right in having his more efficient windows chosen over different windows, be they more aesthetic or less aesthetic or whatever? And so therein lies the problem is these windows were banned. The testimony is vinyl windows are more efficient, right? They're better insulated. Just think of housing, right? You don't have aluminum houses, you don't have metal houses because they're very poor conductors of warmth, of heat. So again, to go back to kind of what I was mentioning to Justice Shostak, if they pass a resolution that windows have to meet this R value, they have to meet this efficiency standard, right? That's a different analysis. But to say we are going to require energy efficiency be a consideration, and then you pass a law that more efficient windows can't be used, that clearly violates the bylaws and the bylaws control. So the bylaws mention R factors insofar as the choice of windows? No, that's the problem. They don't mention anything. They say you're going to, they want people to live in a community with energy efficiency, right? They want energy efficient homes. If they would have passed a resolution, you know, showing some type of objective measure of what's efficient, what's inefficient, then I think your argument... It's not my argument. It's my inquiry. I'm asking questions. Sorry. Sorry, Justice. Then I think that goes more to your question, right? But the problem is they have a subjective standard that is on this record admitted to be less efficient, less economical than these vinyl windows. That therein lies a problem because it's a resolution that defies the bylaws, which the law does not allow. I have no further questions. Justice Shostak, no. All right. Thank you, counsel. You will have time on rebuttal. Mr. Reeses, you may begin your argument. I may please report. Counsel, my name is Mike Reeses and I'm here today on behalf of the defendants' attorneys. The court notes there are three claims at issue on appeal. Count two for tortious interference with business expectancy, count five for civil conspiracy, and count six for concerted activity. We respectfully submit the trial court properly applied the law in the governing documents in granting defendants section 2615 motion to dismiss. The trial court should be affirmed. Plaintiff's theory is that the guidelines conflict with the objectives of energy efficiency as set forth in the declarations. But the declaration does not mandate the most energy efficient material to the exclusion of any other objective and purpose set forth in the declaration. Mr. Reeses, did the declaration ever set forth efficiency? It talks about implementing energy efficient features, materials that are conducive. It is to encourage the use of energy efficient features. So it was in there previously? Yes. It's one of several objectives and purposes that the design review committee has to balance. But the objective regarding energy efficiency stopped short of using mandatory language. It goes on to, quote, encourage, little air quotes there, encourage the use of quality materials conducive to energy conservation. The use of the word encourage does not carry the same weight as require or mandate. Now, counsel talks about all of the different back questions that he believes he's raised on appeal. Interpreting the declaration is a question of law. And that was properly raised on a 2645 motion. The declaration recognizes other purposes in addition to energy conservation. They include to ensure, quote, tasteful and consistent development, close point, to guard against the use of unsuitable materials, to encourage an attractive improvement, attractive improvements, to provide for a subdivision of the, quote, highest quality in character, close point. The declaration's repeated use of such words as attractive, tasteful, harmonious, and of the highest quality and character suggests that the objectives and purposes are aspirational as far as what is aesthetically pleasing, of the highest quality, energy efficient, and eco-friendly. But Mr. Reese, these restrictions were never in there prior. They came in there once Mr. Hall joined the board, correct? That is correct as far as the architectural specifications. The declaration never changed. The guidelines that were passed appropriately by the design review committee, that is what changed effective, I think, was April of 2018. Now let's just assume for the sake of argument that planus vinyl windows were more conducive to energy conservation than fiberglass or aluminum clad windows. The declaration did not require the use of the most energy efficient materials. The design review committee had the discretion to withhold approval for any reason deemed appropriate, including specifically aesthetics. If there's any objective that is placed above any other objective, I would argue it's aesthetics because that's the one that is specifically mentioned as a basis for the design review committee to either approve or withhold approval. Planus' own pleadings raised the issue of aesthetics and what consumers tend to perceive as higher quality windows or window cladding and frames. The design review committee's guidelines are not invalid when measured by the broad aspirational objectives of the declaration. Council, what about the five homes that had already been built with the vinyl windows? Well, they were built before the specifications were changed. As anyone who's ever lived in a planned development can tell you, sometimes when the members on the committee change, you get different priorities. Those five still have, you know, they didn't have to change anything. They didn't have to change anything. Those I mean, they were appropriate at the time, they were approved, and they still have vinyl windows. What about the argument that the change here was directed at the third party being the homeowners, the homeowners now are the ones restricted from purchasing these types of windows? So the way to look at it is if you look at what the declaration requires, it requires the lot owner, that is the home builder, to submit the architectural plan for approval. The resolution is directed at the lot owner, who is the home builder. It is not the home buyer, the potential home buyer, but at that stage, the lot is owned by the builder. It can be silver the action of the design review committee is directed at the plans, and the plans are submitted by the lot owner. So the guidelines are directed at the home builder, not the home buyer. And that is why this case looks more like Continental Mobile Telephone, where the rate change was directed at the plaintiff, not the plaintiff's customers, although admittedly, the plaintiff's customers would be the ones who would have to pay the increased price. And what counsel's doing, or what he was trying to do was, he was trying to reframe this in terms of the impact, what the impact was, as opposed to what acts, intentional and unjustified, allegedly, were directed at the home builder, not the home buyer. So the impact, let's say counsel's right, that the utility bills are increased, right, because they're not using vinyl windows. The impact is not the basis for the claim. Plaintiff essentially is just complaining that the guidelines interfere with the ability to build homes with vinyl windows. But the case requires the plaintiff to plead something more, that the guidelines were intentional and unjustified acts directed at the customer. At most, the plaintiff alleged was a loss of business due to the impact of the guidelines, because his houses would be more expensive to build, as would be equally true of any home builder which wanted to use vinyl windows. Counsel made a statement that... Mr. Reeses, would you have to allege actual malice under the business judgment in order to be successful as a plaintiff? As regards Mr. Hall and Sycamore Creek Home Owners Association, plaintiff would have to well-fledged facts to show that those acts were done with actual malice. And instead, all we got was a litany of legal conclusions and labels about Mr. Hall being selfish and self-feeling and... No specific factual allegations. I don't have to tell you, Illinois, but that's pretty jurisdiction. Right, right. But it does look a little bit... It is a bit ironic that when he gets on the board, these types of things are changed, and they are changed basically in benefit of his building company. It would benefit any company that's using aluminum or fiberglass windows. There was never an allegation that Silverthorne was single-backed as far as its homes being, or architectural plans being rejected. The allegation is, of course, below recognized. Mr. Reeses, were there ever any other builders, are there other builders in Sycamore Creek that used fiberglass windows other than Silverthorne? The not fiberglass, but the efficient windows that they use. Pardon? I'm sorry, do you mean vinyl? Vinyl. Champion was... In fact, one of the emails that opposing counsel attached as a visit see to the sub-submitted complaint specifically identified that a champion window was not approved as well. So it's not just Silverthorne. Okay. Talking for the moment about the civil conspiracy and the conservative action theories in Counts 5 and Counts 6. So the court is aware that because the acts of an agent are considered to be the acts of a principal, there can be no conspiracy or conservative action between the principal and agent. That was one reason the trial court dismissed Counts 5 and 6, because Plaintiff could not satisfy the element requiring a combination between two or more persons when Hall's acts on the Board of Directors or the Design Review Committee were attributable to Sycamore Creek Homeowners Association. Plaintiff put itself out of court. Now, Plaintiff tried to feed around the two or more persons requirements by arguing that somehow Hall will mingle this role as president of JRH Construction with his other roles. Plaintiff is in effect arguing that while acting as an agent for two defendants, he was somehow conspiring with himself. He's the only one allegedly who's, you know, he's acting as an agent and he's acting for two different principals. Plaintiff did not show how JRH Construction combined with Sycamore Creek Homeowners Association or participated in the scheme to adopt the guidelines. Merely characterizing a combination of acts of a conspiracy is insufficient to withstand a motion to dismiss. But let's just suppose for the moment that we get beyond that element. The other problem is that for transfer of action or conspiracy, you have to have a tortious act or a tortious result. What's the tort here? If, as we've argued, Plaintiff did not adequately plead tortious interference, as he attempted in House 2, he certainly can't have a conspiracy or a concert of actions based on tortious interference. If he can't satisfy the elements, for tortious interference. And remember that Plaintiff did not appeal to dismissal of count four, which alleged breach of fiduciary duty. So that can't be the basis for a civil conspiracy received for a concert of actions. That claim is gone because it was never raised on appeal. If there are no further questions, and for all the reasons set forth in our brief, we ask you to affirm the dismissal of the action with prejudice. Justice McLaren, do you have any questions? No. Hi, Justice Shostak. Yes, I do. Council argues, you know, many times throughout his argument here that you have these facts pled in the complaint, and we're at a 2-6-15. Isn't this premature at this point? And shouldn't he be able to have an opportunity to put his facts into evidence? Seven complaints. This case has been pending for five years. This isn't a 2-6-15 where right out of the box, we're making a motion. He went through multiple complaints. He did all of the discovery. The record contained thousands of pages because depositions were taken. He had a chance to develop the facts, to develop his claims. The main one, I think, is a tortious interference because the other two are pretty much tied, you know, derivative of that. Couldn't do it, not because he wasn't given the opportunity, but because the declaration is broad, it's aspirational, and the interpretation of that legal document presented a question of law. If there are no further questions, we ask you to affirm for all the reasons set forth in that brief, and thank you for the opportunity to address me today. Thank you, counsel. Mr. Cronauer, your rebuttal. Thank you, Justice Kennedy. I'll be brief. Just to start with, you know, the argument's been raised throughout this case. Well, it's just Silverthorne that's complaining about this. No one else is, but, you know, the law protects everyone equally. The fact others didn't necessarily sue or exercise their rights doesn't mean that Silverthorne doesn't have any. It's a red herring. It's irrelevant. It's like saying because some people didn't report a crime while others stayed silent, the crime didn't occur, and that's just because Silverthorne spoke up because they have obviously a lot more money on the line than, say, Champion Builders. It makes sense why they would be the ones trying to fight this battle where others, you know, business people don't think it's cost-effective, and it's just irrelevant. It's a red herring to, you know, what my client's rights are. I have one question, Mr. Cronaut. Maybe I asked this before, but could your client, on the five properties that he currently owns, could he build with the new guidelines? So, I don't want to lawyer the question, but practically, legally, could he? Yes. Practically, no, because the clients don't want to pay $50,000 more for their house for these windows. That's the pragmatic problem we have in this case that the law needs to understand. He lost these sales. He lost his contracts because he said, okay, we'll build you this house with these windows. Here's the new price. The buyers walked. So, he still has the lot, so he could sell them to new buyers with the understanding that he'll just give them the new price. They won't know that it's $50,000 more. They'll just know they're getting this house with this price, correct? Again, legally, he could. Practically, he can't because that is a higher threshold market. That's a higher buyer. That's not the type of customer that is necessarily buying these houses, if that makes sense. Well, how much does the house cost, let's say? I apologize. Which is buying the The windows, based on the record, are about $50,000 more for these aluminum-clad windows. I understand that, but what dollar amount of house are we talking? $300,000, $400,000, $500,000, $1,000,000? $300,000 to $500,000. That's a huge expense that at that level of home, most buyers aren't willing to pay. Therein lies the problem. Again, that's a factual issue that the record undermines because it was conceived, timed, and implemented to destroy one competitor that Silverthorne was building in that subdivision with those windows. They knew about it because they had to approve them, and they approved them before. The bylaws are clear. The defense wants to pin their hat on encourage. The problem is, encourage qualifies design features. When you read the whole thing, the objective is clear. It is to ensure high-quality materials conducive to energy conservation for people to live in. That is clearly an express declaration of the bylaws. It has to be fulfilled, which gets into, then, the law of bylaws. If there's a resolution that is contrary to a bylaw, resolution cannot prevail. While there's no doubt, and the defense argues this throughout the business judgment rule, there's a voluntary association that has discretion. It does not have discretion to countermand, ignore, or not try to implement its bylaws. Bylaws control, and they have to be followed. When they don't, that's what the courts are for. That's why we're here. The other undermining issue is competition. The case law is pretty clear. There's lawful competition. There's unlawful competition. A defendant, such as JRH Construction, must forebear other parties' pursuits of legitimate business goals, and they can't pursue illegitimate business means to pursue their own goals. Unfair competition is not privileged. It includes fraud, intimidation, malice, disbargement, or other unlawful conduct. Other unlawful conduct in this case, just as is tortious interference, which the elements have been pled, and the case should be vacated and remanded for further action consistent with that so that we can have at least summary judgment or a trial in the merits. Thank you. Thank you, very much, counsel, for both of your arguments. We will take the matter under consideration, issue a disposition in due course, and we will adjourn this session for the day. Thank you. Thank you.